## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON 1400 Eye Street, N.W., Suite 450 Washington, D.C. 20005, | : : : : : |
| Plaintiff, | : : |
| v. | : Civil Action No._____ |
| U.S. DEPARTMENT OF THE ARMY 104 Army Pentagon Washington, D.C. 20310, | : : : : : |
| Defendant. | : : |

## COMPLAINT FOR DECLARATORY JUDGMENT
## AND INJUNCTIVE RELIEF

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. §

552, as amended, as well as agency FOIA regulations, challenging the failure of the

United States Department of the Army ("Army") to fulfill the request of Citizens for

Responsibility and Ethics in Washington ("CREW") for Army documents concerning

investigations and prosecutions of soldiers accused of acts of domestic violence.

2. This case seeks declaratory relief that defendant is in violation of the FOIA for

failing to fulfill plaintiff's request for records, and injunctive relief that defendant

immediately and fully comply with plaintiff's request under the FOIA.

## JURISDICTION AND VENUE

3. This Court has both subject matter jurisdiction over this action and personal

jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B) and 5 U.S.C. § 702,

which gives the Court jurisdiction over agency actions where an aggrieved party has suffered wrong within the meaning of a "relevant statute," here the FOIA. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Venue lies in this district under 5 U.S.C. § 703, 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

4. Plaintiff CREW is a non-profit corporation, organized under section 501(c)(3) of the Internal Revenue Code. CREW is committed to protecting the right of citizens to be informed about the activities of government officials and to ensuring the integrity of government officials. CREW seeks to empower citizens to have an influential voice in government decisions and in the governmental decision-making process through the dissemination of information about public officials and their actions. To advance its mission, CREW uses a combination of research, litigation, and advocacy. As part of its research, CREW uses government records made available to it under the FOIA.

5. CREW has invested considerable organizational resources in pushing the U.S. government to take ethics issues seriously. CREW monitors closely the laws and rules applicable to government agencies.

6. CREW is harmed by the Army's failure to comply with the FOIA because that failure harms CREW's ability to provide full, accurate, and current information to the public on a matter of public interest. 5 U.S.C. § 552(a)(6)(c). Absent this critical information, CREW cannot advance its mission of educating the public to ensure that the public continues to have a vital voice in government decisions.

7. CREW will analyze the information it receives that is responsive to its request, and will share it with the public through memoranda, reports, or press releases. In addition, CREW will disseminate any documents it acquires from its request to the public

through www.governmentdocs.org, an interactive website CREW founded and that
includes thousands of pages of public documents from a number of organizations in
addition to CREW.  The CREW website also contains links to thousands of pages of
documents acquired from multiple FOIA requests.  See, e.g.,

http://www.citizensforethics.org/node/25784.  Visitors to CREW's website can peruse
the FOIA request letters, the responses from government agencies, and a growing number
of documents responding to FOIA requests.

8.  Defendant Army is an agency within the meaning of 5 U.S.C. § 552(f).
Defendant is the federal agency with possession and control of the requested records and
is responsible for fulfilling CREW's FOIA request.

## STATUTORY FRAMEWORK

### The Freedom of Information Act

9.  The FOIA, 5 U.S.C. § 552, requires agencies of the federal government to
release requested records to the public unless one or more specific statutory exemptions
apply.

10.  An agency must respond to a party making a FOIA request within 20 working
days, notifying that party of at least the agency's determination whether or not to fulfill
the request and of the requester's right to appeal the agency's determination to the agency
head.  5 U.S.C. § 552(a)(6)(A)(i).

11.  An agency must respond to a FOIA appeal within 20 working days, notifying
the appealing party of the agency's determination to either release the withheld records or
uphold the denial.  5 U.S.C. § 552(a)(6)(A)(ii).

3

12. In "unusual circumstances," an agency may delay its response to a FOIA request or appeal, but must provide notice and must also provide "the date on which a determination is expected to be dispatched." 5 U.S.C. § 552(a)(6)(B).

13. This Court has jurisdiction, upon receipt of a complaint, "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).

14. The FOIA provides a mechanism for disciplinary action against agency officials who have acted inappropriately in withholding records. Specifically, when requiring the release of improperly withheld records, if the court makes a written finding that "the circumstances surrounding the withholding raise questions whether agency personnel acted arbitrarily or capriciously," a disciplinary investigation is triggered. 5 U.S.C. § 552(a)(4)(F).

## FACTS GIVING RISE TO PLAINTIFF'S CLAIMS FOR RELIEF

15. On November 25, 2008, CREW sent a FOIA request to the Army seeking documents concerning matters related to domestic violence investigations and prosecutions. Letter from Melanie Sloan, Executive Director, CREW, to Freedom of Information Act Office, Department of Army (November 25, 2008) (attached as Exhibit 1). Specifically, CREW requested all Army records from January 20, 2001, to the present concerning:

1) the Army's policies related to soldiers accused of acts of domestic violence;

2) the number of soldiers arrested for domestic violence related offenses;

3) the number of soldiers prosecuted, the number of soldiers convicted, and the number of soldiers jailed for domestic violence crimes;

4

4) the number of soldiers dishonorably discharged, given bad conduct discharges or, in the case of officers, the total number of dismissals;

5) the number of soldiers honorably discharged following a conviction for a domestic violence offense;

6) the number of soldiers promoted following a conviction for a domestic violence offense;

7) the number of soldiers deployed while a domestic violence investigation or prosecution was ongoing;

8) the number of soldiers ordered to attend anger management classes and/or counseling as a result of a domestic violence complaint pursuant to a deferred prosecution agreement or diversion program;

9) the number of soldiers prosecuted or jailed following a failure to attend mandated anger management classes and/or counseling ordered as a result of a domestic violence complaint;

10) records demonstrating soldiers' attendance of such classes, and records pertaining to any actions taken if and when soldiers failed to attend such classes as ordered;

11) the number of soldiers issued "no contact" orders following domestic violence complaints against them;

12) the number of soldiers who violated "no contact" orders issued following domestic violence complaints;

13) the number of soldiers prosecuted or jailed for violating "no contact" orders issued following domestic violence complaints;

14) the number of domestic violence related offenses committed by soldiers against whom "no conduct" orders were in effect at the time of the offenses;

15) the number of times the Army has requested that a civilian prosecuting authority transfer jurisdiction of a domestic violence crime to the military;

16) the number of times the Army has initiated its own prosecution against an alleged perpetrator of domestic violence following the transfer of jurisdiction from a civil prosecuting authority;

17) the number of times the Army has declined to prosecute a domestic violence crime after having requested a transfer of jurisdiction from a civilian prosecuting authority;

18) any and all decisions by the Army not to prosecute any individual for a domestic violence crime because such a prosecution would have prevented the Army from deploying the alleged perpetrator to Iraq, or anyother foreign country; and

19) any and all records of all case review committees, including but not limited to those at Fort Riley in Kansas and Fort Bragg in North Carolina, regarding the handling of domestic violence complaints and the treatment of those soldiers alleged to have committed such offenses.

Id.[1]

16. By letter dated January 7, 2009, the Army's Freedom of Information and Privacy Division ("FOIA/PD") acknowledged CREW's FOIA request, assigning it Request Number 09-0174. The FOIA/PD advised CREW that it "serves as the referral point and policy office for the Department of the Army Freedom of Information and Privacy Act entities and is not a repository for documents maintained by the Department of the Army." The Army further advised CREW that its request had been referred to six enumerated Army offices. Letter from Robert Dickerson, Chief, U.S. Army Freedom of Information and Privacy Office to Melanie Sloan (January 7, 2009) (attached as Exhibit 2).

17. By letter dated January 12, 2009, the U.S. Army Installation Management Command at Fort Bragg, North Carolina advised CREW that it had received the Army's referral of CREW's request and assigned it FOIA Case Number 40-09. CREW was further advised that the request had been referred to the Womack Army Medical Center FOIA Office. Letter from John L. Durden, Jr., Administrative Services Officer, Fort Bragg to Melanie Sloan (January 12, 2009) (attached as Exhibit 3).

---

[1] CREW submitted a similar request directly to the U.S. Army Accessions Command on February 18, 2009. That request was responded to with a release of documents on August 25, 2009, and is not part of this Complaint.

18. By letter dated February 3, 2009, the Army's Crime Records Center acknowledged CREW's request, assigned it Request Number FA09-0868, and advised that the actual processing time for the request could take approximately 30 to 60 days, depending upon various factors. Letter from Phillip J. McGuire, Director, Crime Records Center to Melanie Sloan (February 3, 2009) (attached as Exhibit 4).

19. By letter dated February 13, 2009, the Office of the Judge Advocate General ("JAG") acknowledged CREW's request. The JAG claimed to have no responsive records except for the Army policy concerning domestic violence, which is published in Army Regulation 608-18, The Army Family Advocacy Program (30 October 2007). Letter from Charles N. Pede, Colonel, Chief, Criminal Law Division to Melanie Sloan (February 13, 2009) (attached as Exhibit 5). The JAG also advised that it had referred responsive records to the Office of the Clerk of Court for the U.S. Army Judiciary and the Commander, U.S. Army Family and Morale, Welfare and Recreation Command for their review. Id.

20. On February 18, 2009, Scott Hodes, Counsel for CREW, spoke with Mary Chapman of the U.S. Army Court for Criminal Appeals. Ms. Chapman explained that the JAG had referred CREW's request to her office to respond to items 3 and 4 of the request. According to Ms. Chapman, her office could not begin a search for item 3 of the request until CREW provided a definition of "domestic violence" crimes, because the U.S. Army Court for Criminal Appeal's database contains a large number of crimes, none of which is sub-grouped into "domestic violence" crimes. Ms. Chapman subsequently provided CREW's counsel by email with the Specification List from ACMIS ("Army Court-Martial Information System") for CREW's use in identifying generic domestic

7

violence crimes. Email from Mary Chapman to Scott Hodes (February 18, 2009) (attached as Exhibit 6).

21. By e-mail dated February 24, 2009, CREW provided a list of the crime specifications sought to be included in the Army's response. Email from Scott Hodes, counsel for CREW to Mary Chapman, U.S. Army Court of Criminal Appeals, (February 20, 2009) (attached as Exhibit 7).

22. By email dated March 4, 2009, the Army Court of Criminal Appeals released a one-page excel spreadsheet of court-martial statistics on crimes against accused's dependents for those crimes identified by CREW. Email from Mary Chapman, U.S. Army Court of Criminal Appeals to Scott Hodes, (March 4, 2009) (Attached as Exhibit 8).

23. By letter dated March 6, 2009, the National Personnel Records Center (Military Personnel Records) ("NPRC") advised CREW that it had assigned the matter Request No. 1-5597758782, but that because NPRC does not have jurisdiction over Army policy matters, it was referring the request to the Commander, U.S. Army Human Resources Command, located in St. Louis, Missouri. Letter from Dawn M. Pedersen, Archives Technician (4A) to Melanie Sloan (March 6, 2009) (attached as Exhibit 9).

22. By email dated October 20, 2009, Dorothy Hindman, U.S. Army Installation Management Command, released an October 7, 2009 memorandum advising that her office is responsible only for records retained by the Army Family Advocacy Program and that all other records belong to other Army Organizations and Medical Command, located at Ft. Sam Houston. Email from Dorothy Hindman, HQ Installation Management Command to Scott Hodes (October 20, 2009) (attached as Exhibit 10).

23. By email dated October 27, 2009, the Army Medical Command responded that only item 19 of CREW's request fell under its purview and that, as to that item, it was denying the request pursuant to FOIA exemption 3. In support, the Army Medical Command cited 10 U.S.C. § 1102, which protects the confidentiality of medical quality assurance records. Email from John P. Peterson, Chief, Freedom of Information/Privacy Act Office, HQ, U.S. Army Medical Command. (October 27, 2009) (attached as Exhibit 11).

24. By letter dated November 3, 2009, the U.S. Army Criminal Investigation Command ("USADIC")'s Crime Records Center responded with records pertaining to item number 2 of CREW's request. Letter from Phillip J. McGuire, Director, Crime Records Center to Melanie Sloan (November 3, 2009) (attached as Exhibit 12). According to the Crime Records Center, an automated search of its Automated System Crime Records Center (ASCRC) disclosed that there were 3,080 USACIDC Reports of Investigation and 8,589 Military Police Reports including one or more domestic abuse allegations and naming one or more soldiers as the subject of an offense in the reports for the time frame of CREW's request. Id.

25. By letter dated November 4, 2009, CREW administratively appealed the Army Medical Commands search for records and the withholding of responsive records. Letter from Scott A. Hodes to CDR U.S. Army Medical Command (November 4, 2009) (attached as Exhibit 13).

26. To date, defendant has failed to locate and release information pertaining to items 2-5 of CREW's request. Defendant has further failed to locate and release any information pertaining to items 1 and 6-19 of CREW's FOIA request.

## PLAINTIFF'S CLAIMS FOR RELIEF

### CLAIM ONE
### (Failure to Conduct an Adequate Search)

27. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

28. Plaintiff submitted a request that reasonably described the records sought and was made in accordance with the Army's published rules.

29. In response, the Army failed to conduct a search reasonably calculated to uncover all responsive agency records.

30. Therefore, the Army violated the FOIA's mandate to search for responsive records. 5 U.S.C. §552(a)(3)(D).

31. Plaintiff is entitled to injunctive and declaratory relief with respect to the search for the requested records.

### CLAIM TWO
### (Failure to Produce Records Under the FOIA)

32. Plaintiff realleges and incorporates by reference all preceding paragraphs.

33. Plaintiff properly asked for records within the Army's control.

34. Plaintiff is entitled by law to access to the records requested under the FOIA, unless defendant makes an explicit and justified statutory exemption claim.

35. The Army has not produced all the records responsive to CREW's FOIA request.

36. Therefore, the Army violated the FOIA's mandate to release agency records to the public by failing to release the records as plaintiff specifically requested. 5 U.S.C. §§ 552(a)(3)(A), 552(a)(4)(B).

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court:

(1) Declare that the Army has violated the FOIA by failing to conduct an

adequate search for records responsive to plaintiff's FOIA request of November 25,

2008;

(2) Order the Army to immediately conduct an adequate search for responsive

records that includes a search of any and all Army components that may have responsive

records;

(3) Declare that the Army has violated the FOIA by failing to lawfully satisfy

plaintiff's FOIA request of November 25, 2008;

(4) Order the Army to release all records responsive to plaintiff's FOIA request;

(5) Award plaintiff its reasonable attorney fees and litigation costs in this action,

pursuant to 5 U.S.C. § 552(a)(4)(E); and

(6) Grant such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Anne L. Weismann
(D.C. Bar No. 298190)
Melanie Sloan
(D.C. Bar No. 434584)
Citizens for Responsibility and
 Ethics in Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C.  20005
Phone: (202) 408-5565
Fax: (202) 588-5020

11

Scott A. Hodes
(D.C. Bar No. 430375)
P.O. Box 42002
Washington, D.C.  20015
Phone (301) 404-0502
Fax (413) 641-2833

Attorneys for Plaintiff

Dated: December 10, 2009